IN THE UNITED STATES DISTRCIT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| TERRY PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  2:17-cv-2233 JTM-JPO |
| | ) | |
| vs. | ) | |
| | ) | |
| PRIMEREVENUE, INC. | ) | |
| et al. | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Terry Pierce, by and through his counsel, Christopher Pickering of the Pickering Law Firm, P.A., and for his First Amended Complaint against the Defendants, alleges and states as follows:

**THE PARTIES**

1. Terry Pierce is an individual and resident of Overland Park, Johnson County, Kansas residing at 13310 West 137th Terrace.

2. PrimeRevenue, Inc. (PrimeRevenue) is a Delaware company, doing business in Georgia and Kansas, but is not registered to do business in Kansas.

3. Defendant David Quillian is an individual residing in Atlanta, Georgia, and a Vice President and General Counsel of PrimeRevenue, Inc.  He is, in addition, a shareholder in PrimeRevenue and member of the Board of Directors.

4. Defendant B.J. Bain in an individual residing in Atlanta, Georgia, and is the CEO of PrimeRevenue, and a member of and chairman of the Board of Directors, and a shareholder.

**VENUE AND JURISDICTION**

5. This matter was initially filed on Kansas State District Court and has been properly

removed to this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

6. PrimeRevenue is a company that provides supplier financing for companies, backed by the credit of the buyers.

7. Instead of suppliers financing the purchase / fabrication of goods to be supplied to the buyers, PrimeRevenue arranges for the financing to be provided by or backed by the buyer – whose creditworthiness is higher than the supplier.

8. PrimeRevenue works with the buyers and lenders to provide financing for the suppliers. The arrangement has benefits for the suppliers and buyers as lower financing costs for the supplies are realized through use of lower interest rates for the supplies.

9. PrimeRevenue employs salespersons like Terry Pierce to call on potential customers (suppliers) who may be interested in the benefits of supply chain financing.

10. PrimeRevenue compensated its sale force through a system of promised salary, commissions, and stock options. The commission and bonus terms are contained in documents called Target Award Letter / Target Award Agreement.

11. PrimeRevenue knew that the sales cycle – from initial contact with a potential customer to agreement – would range from 9 months to 24 months. Accordingly, it promised commissions based upon completed agreements with suppliers (called Managed Service Agreements), and a percentage of the recognized revenue from new and existing customers. The relevant "Target Award Letters" (TAL) are exhibits "A" and "B" for 2014 and 2016.

12. In 2016, Plaintiff was offered and accepted stock options as part of his compensation. A copy of the stock option is attached hereto as Exhibit "C." The

stock was to compensate for certain changes in incentive compensation between the 2014 plan and the 2016.

13. Notwithstanding the changes in the 2014 and 2016 plans, commissions for recognized revenue generated by Plaintiff under the 2014 plan were paid in accordance with the 2014 plan.

14. Defendants Bain and Quillian decided sometime in 2015 to attempt to sell PrimeRevenue to a suitor – SAP. They recognized that the incentive plans entered into with Plaintiff in 2014 and 2016 would make the deal look worse to a suitor than if they had not negotiated the contracts. This was because of the commissions PrimeRevenue was obligated to pay to Pierce, and the value of his stock.

15. Both the value of his stock, and the earned commissions were business expectancies. The commission were earned over time as PrimeRevenue received revenue from the supply chain funding MSA's. Commissions were earned once the MSA was signed and then commissions were paid in declining percentages over the next 24 months for each new account.

16. Commissions were earned for existing accounts if there was increased revenue from existing MSA's.

17. Bain and Quillian also recognized that their "take" from any sale would be less if (1) Plaintiff was paid his earned commissions and (2) Plaintiff could exercise his stock option to perfect his ownership interest in the company.

18. As a result, Bain and Quillian entered into an agreement to attempt to prevent Pierce from collecting his earned commissions and execute his stock options so they could benefit from the sale of the company to a suitor – and thereby increase the take

to defendants Bain and Quillian.

19. Because of the structure of the stock incentive plan, the commission plan and the contact to agreement cycle, Bain and Quillian were in a fiduciary relationship with Pierce. This conduct to prevent him from vesting in his stock and deprive him of commissions was a breach of their fiduciary duty to Plaintiff.

20. Bain and Quillian were aware of Pierce's business expectancy and intentionally interfered with it.

21. Bain and Quillian no justification for their conduct.

22. Pierce has been damaged by this in that Bain and Quillian procured the company's breach of its agreement to pay commissions, and they and have damaged the value of his stock.

23. The conduct identified in paragraphs 14 through 22 constitutes tortious interference with Pierce's business expectancy in the value of the stock and his commissions.

24. The conduct identified in paragraphs 14 through 22 is a breach of the defendants' duty of good faith and fair dealing.

25. The services provided by Pierce were of value to Defendant PrimeRevenue in the form of locating businesses to use PrimeRevenue's services.

26. Defendant PrimeRevenue recognized the benefits of Pierce's services, and accepted the benefits of these services knowingly and freely.

27. The reasonable value of these services received by PrimeRevenue from Pierce is $1,193,332.49 for new sales, $15,456.39 for existing sales and bonus pay in the amount of $10,000.00, as PrimeRevenue has now and in the future will receive the

benefits of the sales revenue generated by the services of Pierce.

## COUNT I BREACH OF CONTRACT / KANSAS WAGE PAYMENT ACT VIOLATION [ALL DEFENDANTS]

28. Pierce incorporates, as if fully set forth herein, each and every allegation set forth in all prior paragraphs above.

29. During the effective dates of the TALs, Plaintiff performed all of his duties to Defendant PrimeRevenue, and in accordance with the TALs

30. As a result of Plaintiff's performance of these services, Defendant PrimeRevenue signed MSA agreements with third parties to provide services.

31. As a result of these contracts for services, PrimeRevenue recognized revenue from these MSA's and in accordance with the TALs Plaintiff is entitled to payment from Defendant PrimeRevenue of commissions, and bonus.

32. Although Plaintiff has earned this commission, Defendants have without justification or excuse, failed and refused to pay the same to Plaintiff.

33. As a result, Plaintiff has been damaged in an amount believed to be at least $1,219,332.49, representing commissions earned in accordance with the TALs.

34. Defendant PrimeRevenue is in breach of its TALs with Pierce in an amount believed to be $1,219,332.49, with payment being due.

35. Failure to pay in accordance with Plaintiff's TAL agreement is a violation of the Kansas Wage Payment Act, K.S.A. 44-323, and the individual defendants and the corporate defendant are personally liable to Plaintiff for the unpaid wages.

36. Defendants are also personally liable to the Plaintiff for the penalties provided for by K.S.A. 44-315(b) for willful failure to pay wages in an amount to be determined,

     but calculated at one percent per day from the date each commission payment is due up to 100% of what is owed.

37. Plaintiff has complied with each and every requirement of his TAL agreements with Defendant PrimeRevenue.

38. There is no justification for the failure of Defendants to pay in accordance with the terms of the Agreement.

39. As this is a liquidated amount, Plaintiff is entitled to pre and post-judgment interest in the highest amount authorized by law.

WHEREFORE, Plaintiff prays for judgment against Defendants for an amount believed to be at least $1,219,332.49, plus interest thereon at the highest legal rate, for its costs and expenses herein and for such other and further relief as this Court deeds just and proper.

### COUNT II [Defendants PrimeRevenue, Bain and Quillian]

40. Plaintiff incorporates as if fully set forth herein, each and every allegation set forth in all prior paragraphs above.

41. The TAL Agreements had as a common purpose, specifically, Plaintiff expending his efforts to locate and broker new business for Defendant PrimeRevenue and Plaintiff expending his effort to locate and broker new business for PrimeRevenue.

42. It was the Plaintiff's and Defendant PrimeRevenue, Bain and Quillian's expectation that Plaintiff would locate new business and continued business all for which Defendants would receive an economic benefit.

43. It was also the Plaintiff's and Defendants' expectation that Plaintiff would be compensated by Defendant PrimeRevenue for Plaintiff's efforts in locating new business and continuing old business.

44. Defendants' conduct in purporting to unilaterally terminate Plaintiff without paying Plaintiff his reasonable commission and bonuses is a breach of Defendant's duty of good faith and fair dealing, and is patently unreasonable when measured against the reasonable expectations of the parties to the TAL Agreements.

45. In purporting to unilaterally terminate Plaintiff and/or the TAL Agreements, Defendants are taking away the economic benefit and advantage of these agreements to Plaintiff and thereby depriving Plaintiff of the value of its services and the expectation of compensation for provision of services, and destroying the value of these Agreements to Plaintiff, all in violation of Defendants' duty of good faith and fair dealing.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count II of its Petition for commissions under the Exclusive Agency Agreements in the amount believed to be at least $1,219,332.49, for its costs and expenses herein, for interest at the highest rate available for all liquidated amounts, and for such other and further relief as the Court deems just and equitable.

## COUNT III QUANTUM MERUIT [PrimeRevenue]

46. Plaintiff incorporates, as if fully set forth herein, each and every allegation set forth in all prior paragraphs above.

47. Plaintiff performed valuable services in the form of locating buyers of Defendant PrimeRevenue's services, under circumstance under which it would be wholly inequitable for Defendant not to compensate Plaintiff for such services.

48. The afore-described services were actually performed by Plaintiff, and actually received by Defendant for whom the actual benefit of Plaintiff's services was actually realized.

49. Defendant was aware of the fact that Plaintiff has conferred the afore-described services for Defendant's benefit, and Defendant accepted such benefit knowingly and freely.

50. The reasonable value of the afore-described services rendered by Plaintiff and received by Defendant are an amount believed to be at least $1,219,332.49.

51. Plaintiff has made demand for compensation for such services rendered to him and his entities, but Defendant has refused payment.

WHEREFORE, Plaintiff prays for judgment against Defendant for the reasonable value of its services rendered, and knowingly received by Defendant, in an amount believed to be at least $1,219,332.49, plus interest at the highest legal rate on all liquidated amounts, and for such other and further relief as this Court deems just and proper.

## COUNT IV TORTIOUS INTEFERENCE [BAIN AND QUILIAN]

52. Plaintiff incorporates, as if fully set forth herein, each and every allegation set forth in all prior paragraphs above.

53. The conduct of the Defendants Bain and Quillian, as alleged in paragraphs 14 through 22 above, has caused a breach in Plaintiff business expectancy with Defendant PrimeRevenue.

54. The conduct of the Defendants is intentional, malicious and is designed to cause the breaches identified above, damages to Plaintiff in the form of lost commissions and bonus and is without justification.

55. Plaintiff has been damaged by these actions in an amount believed to be in excess of $75,000.00

WHEREFORE, Plaintiff prays for judgment against the Defendants Bain and Quillian, and each of them in a fair and reasonable amount to compensate Plaintiff for his injuries, which are believed to be in excess of $75,000.00

Respectfully submitted,

/s/ Christopher F. Pickering

Christopher F. Pickering, MO #32666
THE PICKERING LAW FIRM, P.A.
130 N Cherry Street, Ste. 100
Olathe, Kansas 66061
cfp@pickeringlawfirm.com
Telephone: 913.647.9019
Facsimile: 8448048114
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

      I certify that on this 13st day of June 2017, a copy of the foregoing was EMAILED to:

Brian Christensen
Brian.Christensen@jacksonlewis.com


                /s/ Christopher F. Pickering

                *ATTORNEY FOR PLAINTIFFS*